**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| NICOLE TAJKOWSKI, | : | Case No. 3:16-cv-299 |
| | : | |
| Plaintiff, | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| | : | |
| NANCY A. BERRYHILL, | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATIONS[1]**

## I. Introduction

Plaintiff Nicole Tajkowski brings this case challenging the Social Security Administration's denial of her application for period of disability and Disability Insurance Benefits. She applied for benefits on March 11, 2013, asserting that she could no longer work a substantial paid job. Administrative Law Judge (ALJ) Gregory G. Kenyon concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. #11), the administrative record (Doc. #5), and the record as a whole.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Kenyon's non-disability decision.

## II. Background

Plaintiff asserts that she has been under a "disability" since May 30, 2008. She was thirty-five years old at that time and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(c). She has a high school education. *See* 20 C.F.R. § 404.1564(b)(2).

### A. Plaintiff's Testimony

Plaintiff testified at the hearing before ALJ Kenyon that she has fibromyalgia that causes her pain "generally all over." (Doc. #5, *PageID* #98). The pain in her legs is a "really big problem." *Id.* at 99. Her pain is "a very dull aching down to the bone," and on a scale from one to ten, she stated that her pain was generally at a six or seven. *Id.* On a good day, it may be at five, and on a bad day, it can be as high as nine. *Id.* at 112. She estimates that in a thirty day period, she has fifteen to twenty bad days. *Id.* at 113. Her pain "travels from one place to another." *Id.* at 99. For example, she may have pain in her arms and hands in the morning, and then have pain in her ankles and knees in the evening. *Id.* Her pain is aggravated if she overdoes anything. *Id.* at 99. After spending a few hours at a pizza restaurant with her family, for example, she was in such severe pain that she had to stay in bed all of the next day. *Id.* at 99-100.

Fibromyalgia also causes her to have trouble concentrating. *Id.* at 100. "If I try to read something, I don't always comprehend it. If I try to tell a story, I lose my train[] of

thoughts often." *Id*. In 2008, she stayed in bed for up to eighteen hours and would still be tired after spending time with her family. *Id.* at 101. At the time of the hearing, she was spending between twelve and fourteen hours per day in bed and still experiencing fatigue when she got up. *Id.* at 100.

Plaintiff takes medication for fibromyalgia, including Lyrica, Cymbalta, meloxicam, naltrexone, and tramadol. *Id.* at 101. She is not sure if Lyrica helps but she "would be fearful to go off Lyrica, but [she] cannot swear that it's working so wonderfully either." *Id.* at 102. She tried to do water aerobics with a friend, and it completely wore her out. *Id*. When she got out of the pool and for two days after, she stayed in bed and had trouble functioning. *Id*.

Plaintiff has obstructive sleep apnea and has had three sleep studies. *Id.* at 102. During the last study, she was supposed to be fitted for a CPAP. *Id.* at 102-03. However, she could not take her medications and as a result, was not able to sleep for long enough for them to see if the mask was working. *Id.* at 102-03. She cannot afford to have a fourth sleep study. *Id.* at 103.

In March 2013, Plaintiff was diagnosed with diabetes. *Id.* at 103. She takes metformin. *Id*. Although she is supposed to test her blood glucose every day, she does not. *Id*.

Plaintiff also has irritable bowel syndrome. *Id.* at 103. She has urgent bowel movement five to eight times every day and has for the last few years. *Id.* at 104. She has accidents one to two times per month and does not leave her house because of it. *Id*.

Plaintiff has had headaches since she was in her early twenties. *Id.* at 111. She has them about twice per week. *Id.* She also gets migraines. *Id.* Her doctor prescribed medication but she had not received it at the time of the hearing. *Id.*

She also experiences depression and anxiety. *Id.* at 104. She has crying spells once or twice a week that last approximately an hour. *Id.* at 105. She also has difficulty concentrating. *Id.* For example, she is responsible for the budget but has to have her husband check her work because she makes mistakes often. *Id.* She has panic attacks every couple of months. *Id.* at 106. She does not like to be in crowds but can go to a restaurant or store if they are not too crowded. *Id.* at 107. She does not socialize with friends. *Id.*

On a good day, Plaintiff is able to stand for fifteen to twenty minutes. *Id.* at 107. On a really bad day, she can only stand for a few minutes. *Id.* at 108. She is only able to walk short distances. *Id.* She can sit for approximately forty-five minutes to an hour. *Id.* At home, she reclines with her feet up every day. *Id.* at 108-09, 112. She is able to lift a milk jug comfortably. *Id.* at 109. She can "mostly" dress herself and shower but she occasionally needs "bathroom help." *Id.* She does not have any hobbies. *Id.* at 110.

Plaintiff lives in a house with her husband. *Id.* at 97. She has a driver's license and is able to drive but does not have a car. *Id.* at 97-98. If she does drive, it is only for short distances because she has a lot of anxiety. *Id.* at 98. She does not do many chores at her house because of her pain. *Id.* at 106. She is able to refill the dog's food and water dishes, take her own dishes to the sink, load and unload the dishwasher (on a good day), and fold laundry if she is sitting on the couch. *Id.* at 110.

On a good day, "I can get up, shower and then I have to rest on the couch for a while after the shower. I can maybe make plans to go to my mother-in-law's house and sit and visit with them and then come home and go to bed." *Id*. By comparison, on a bad day, "I can basically get up and use the restroom, maybe go out on the couch. Sometimes I will get on the computer and play solitaire. I really just rest and take it really easy … I will try to get up, just walk circles in the living room and sit back down just so my body doesn't tighten, stiffen up." *Id*.

Plaintiff has a twenty-one year old daughter and a six and one-half month old granddaughter. *Id.* at 114. "I have a hard time watching her, lifting her, carrying her. Sometimes her touch, and she gets frustrated, is painful. It's really hard to not be able to snuggle with your granddaughter." *Id*.

### B. Medical Opinions

#### i. Tina Godwin, D.O.

Dr. Godwin, Plaintiff's treating physician, completed interrogatories on February 19, 2014. *Id.* at 1023-30. At that time, she had been treating Plaintiff for one year. *Id.* at 1023. Dr. Godwin indicated that she treats Plaintiff for fibromyalgia, hypothyroidism, depression, degenerative disc disease, obstructive sleep apnea, periodic limb movement disorder, hypertension, and irritable bowel syndrome. *Id*. She opined Plaintiff could not be prompt and regular in attendance because "debilitating and unpredictable pain [and] fatigue related to fibromyalgia limit [Plaintiff's] ability to attend work on a reliable basis due to needing rest/pain medication." *Id.* at 1024. For the same reasons, she could not demonstrate reliability. *Id.* at 1025. Further, Plaintiff could not withstand the pressure of

5

meeting normal standards of work productivity and accuracy without significant risk of decompensation or worsening of impairments.  *Id.*  Dr. Godwin explained, "fatigue [and] depression are profound making it impossible to predict days/times [Plaintiff] would be able to carry out any physical requirements [without] injury and social interaction [without] mental distress."  *Id.*

She opined that Plaintiff was unable to lift more than five pounds without pain.  *Id.* at 1026.  Further, she could stand and walk without interruption for less than twenty minutes for a total of less than one hour in an eight-hour workday and sit without interruption for thirty minutes for a total of one to two hours.  *Id.* at 1026-27.  She noted Plaintiff experiences fatigue after walking more than ten steps and pain after standing for more than one to two minutes.  *Id.* at 1026.  She could occasionally crouch and kneel but never climb, balance, stoop, or crawl.  *Id.* at 1027.

Dr. Godwin found that reaching could cause Plaintiff weakness, pain, and fatigue.  *Id.* at 1028.  Additionally, prolonged handling, fingering, feeling, pushing, or pulling could cause fatigue of muscle groups.  *Id.*  She indicated that muscle group fatigue leads to weakness and weakness leads to paralysis.  *Id.*  Plaintiff exposure to heights, moving machinery, chemicals, temperature extremes, vibration, dust, noise, fumes, and humidity is restricted because all cause migraines.  *Id.* at 1028-29.  Dr. Godwin concluded she does not have the residual functional ability to do light or sedentary work on a sustained basis.  *Id.* at 1030.  She notes, "patient's pain [and] fatigue are constant [and] unpredictable requiring abnormal sleep patterns, frequent medical attention [and] pain control."  *Id.*

Dr. Godwin also completed a mental impairment questionnaire regarding fibromyalgia. *Id.* at 1031-32. She opined Plaintiff has a history of widespread pain that has persisted for more than three months. *Id.* at 1031. Additionally, she indicated that Plaintiff experiences the following: muscle pain and weakness, fatigue, thinking problems, headaches, stomach and upper abdomen pain, numbness or tingling, dizziness, insomnia, depression, constipation, nausea, nervousness, diarrhea, heartburn, shortness of breath, and rash. *Id.*

### ii. Lynne Torello, M.D., Frank Stroebel, M.D., & Leon D. Hughes, M.D.

Dr. Torello reviewed Plaintiff's records on July 24, 2012. *Id.* at 125-33. She opined Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk for a total of six hours in an eight-hour day, and sit for a total of six hours. *Id.* at 131. She could never climb ladders, ropes, or scaffolds and occasionally stoop, kneel, crouch, crawl, or climb ramps and stairs. *Id.* at 131-32. Dr. Torello concluded that Plaintiff is not under a disability. *Id.* at 133.

On June 5, 2013, Dr. Stroebel agreed that Plaintiff was not under a disability. *Id.* at 135-42. He did not complete a residual functional capacity assessment. *Id.* at 141. On September 25, 2013, Dr. Hughes reviewed Plaintiff's record, did not complete a residual functional capacity assessment, and agreed that Plaintiff is not under a disability. *Id.* at 144-52.

### iii. Aracelis Rivera, Psy.D., Patricia Semmelman, Ph.D., & David Demuth, M.D.

On June 4, 2012, Dr. Rivera reviewed Plaintiff's records and found seven severe impairments: fibromyalgia, obesity, other congenital anomalies, sleep-related breathing disorders, disorders of back–discogenic and degenerative, diabetes mellitus, and anxiety disorders. *Id.* at 129-30. She concluded that the evidence of record in the file was not sufficient to fully evaluate her psychological disorder. *Id.* at 130-31.

Dr. Semmelman reviewed Plaintiff's records on June 4, 2013. *Id.* at 139-40. She found four severe impairments: disorders of back–discogenic and degenerative, fibromyalgia, affective disorders, and anxiety disorders. *Id*. She agreed with Dr. Rivera that there was insufficient evidence to evaluate Plaintiff's psychological disorders. *Id*.

On September 25, 2013, Dr. Demuth reviewed Plaintiff's records and agreed with Dr. Semmelman. *Id.* at 149-50.

### III. Standard of Review

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. § 423(d)(1)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part

*Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

IV. **The ALJ's Decision**

As noted previously, it fell to ALJ Kenyon to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since May 30, 2008.

Step 2: She has the severe impairments of degenerative disc disease of the lumbosacral spine; type II diabetes mellitus; hypothyroidism; morbid obesity; obstructive sleep apnea; a history of irritable bowel syndrome; a history of headaches; depression; and anxiety.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … subject to the following limitations: (1) occasional crouching, crawling, kneeling, stooping, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, and scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) limited to performing unskilled, simple, repetitive tasks; (5) occasional contact with co-workers, supervisors, and members of the general public; (6) no jobs involving fast paced production work or strict production quotas; and (7) limited to performing jobs in a relatively static work environment in which there is very little, if any, change in the job duties or the work routine from one day to the next."

Step 4: She is unable to perform any of her past relevant work.

>    Step 5:    She could perform a significant number of jobs that exist in the
>               national economy.

(Doc. #5, *PageID* #s 77-85). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 85.

## V. <u>Discussion</u>

Plaintiff contends that the ALJ erred in evaluating her treating physician's opinion and her pain and symptom severity. The Commissioner maintains that substantial evidence supports both the ALJ's assessment of Plaintiff's treating physician's opinion and his evaluation of Plaintiff's pain and symptom severity.

### A. Dr. Godwin's Opinion

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length,

11

frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id*. (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id*. Substantial evidence must support the reasons provided by the ALJ. *Id*.

ALJ Kenyon found that the opinion of Plaintiff's treating physician, Dr. Godwin, was entitled to "little weight." (Doc. #5, *PageID* #82). His discussion of Dr. Godwin's opinion does not address the treating physician rule. This constitutes error. "The failure to provide 'good reasons' for not giving [a treating physician's] opinions controlling weight hinders a meaningful review of whether the ALJ properly applied the treating-physician rule that is at the heart of this regulation." *Gayheart,* 710 F.3d at 377 (citing *Wilson,* 378 F.3d at 544).

However, even if the ALJ had properly explained his consideration of the treating physician rule, substantial evidence does not support his reasons for concluding that Dr. Godwin's opinion is only entitled to "little weight." "[I]n all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding." *Rogers*, 486 F.3d at 242

(citing Soc. Sec. R. 96-2p, 1996 WL 374188, at *4). And, if the treating physician's opinion is not entitled to controlling weight, it still "must be weighed using all of the factors provided in 20 CFR [] 416.927." Soc. Sec. R. 96-2p, 1996 WL 374188, at *4.

ALJ Kenyon did address a few of the factors. He found that Dr. Godwin's opinion that Plaintiff is precluded from performing sedentary level work for more than three hours per day and that she is unable to perform most work-related mental activities is "grossly disproportionate" to Plaintiff's level of treatment and the objective evidence of record. He does not provide any examples or further explanation.

The ALJ does not acknowledge Plaintiff's extensive medical history. For example, Plaintiff's history with depression is also well documented. In June 2003, Plaintiff's primary-care physician diagnosed depression and prescribed Wellbutrin SR. (Doc. #5, *PageID* #797). In August 2008, Plaintiff's new primary-care physician, Dr. Perez, noted that she was moody and had decreased sleep, motivation, and interest. *Id.* at 533. Further, Plaintiff was weepy when she discussed depression. *Id.* Dr. Perez prescribed both Cymbalta and Wellbutrin. *Id.* at 531-34. Plaintiff's treatment for depression continued with Dr. Kaiser, who also prescribed Cymbalta. *Id.* at 1124.

The record also illustrates Plaintiff's long history with fibromyalgia. In August 2007, Dr. Birnbaum diagnosed fibromyalgia, prescribed pain medication, and recommended aquacise. *Id.* at 430. Dr. Perez noted fibromyalgia triggers in her right sacroiliac, both knees, and both elbows. *Id.* at 533. By 2009, Plaintiff presented to Dr. Stevens, a rheumatologist, reporting global pain, brain fog, and poor sleep. *Id.* at 688. He noted 12 of 16 symmetrical tender points. *Id.* And, Dr. Godwin documented chronic

fatigue and pain with newer knee and hip pain in June 2013. *Id.* at 1102-05. She prescribed Ultram, Lyrica, and Mobic for fibromyalgia. *Id.* at 1094. Similarly, documentation of Plaintiff's headaches dates back to August 2005, and her lower back pain dates back many years to September 2005. *Id.* at 787, 789.

Throughout the ALJ's decision, he refers to a few of Plaintiff's medical records. The references, however, do not offer any clarity. For example, the ALJ refers to a treatment note from Plaintiff's former treating physician, Dr. Kaiser, which indicated Plaintiff reported that "she was able to get up and do things." *Id.* at 83 (citing Exhibit 27F, p. 85). Although that statement is included, Dr. Kaiser's note in full explains,

> Patient is here in follow up of fibromyalgia. She reports she is doing okay and is able to get up to do things. She did some dusting last night. She does complain of aching in her right thigh but denies tingling or numbness. The aching is consistent and intense, however. She states the pain usually bothers her when she gets up but sometimes also at night. Her husband massages the area with his fist and this feels good to her. She also complains of tailbone pain for the past two weeks, since moving. She has tried heat, massage, and rest for this without relief. She has not tried ice. She reports standing worsens the pain. She has seen a chiropractor in the past, Dr[.] James Miller or McEwan.

*Id.* at 1126. Dr. Kaiser's note not only illustrates Plaintiff's chronic medical problems, it is consistent with Dr. Godwin's opinion.

The ALJ also found that Dr. Godwin "merely" accepted Plaintiff's subjective allegations and complaints. Again, the ALJ does not give any further explanation. Dr. Godwin's notes reveal that her conclusions were based on her examinations of Plaintiff as well as Plaintiff's reports. Further, the ALJ does not recognize Dr. Godwin's notes

14

indicate that she reviewed Plaintiff's medical history, and Dr. Godwin practices in the same office as Dr. Kaiser, Plaintiff's former primary-care physician.

Finally, the ALJ notes that Dr. Godwin is not a mental health professional. He is correct, and specialization is a factor for an ALJ to consider, *see* 20 C.F.R. § 404.1527(c)(5). However, the ALJ does not acknowledge that most of Dr. Godwin's opinions are based solely on Plaintiff's physical impairments. For example, Dr. Godwin opines Plaintiff cannot be prompt and regular in attendance and explains, "debilitating and unpredictable pain [and] fatigue related to fibromyalgia limit [Plaintiff's] ability to attend work on a reliable basis due to needing rest/pain medication." (Doc. #5, *PageID* #1024). Thus, the fact she is not a mental health professional does not add or detract from her opinion on Plaintiff's physical impairments.

There are several factors that the ALJ appears to have ignored or overlooked. ALJ Kenyon does not acknowledge that Dr. Godwin is Plaintiff's treating physician. *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) …."). Further, Dr. Godwin had treated Plaintiff for approximately one year before giving her opinion, and in that time period, saw Plaintiff at least seven times. *Id.* § 404.1527(c)(2) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").

15

In sum, ALJ Kenyon's reasons for assigning Dr. Godwin's opinion "little weight" are not supported by the record and are not "'sufficiently specific to make clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight.'" *Cole v. Astrue,* 661 F.3d 931, 937 (quoting Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at *5). Consequently, they do not constitute "good reasons" under the Regulations. When an ALJ fails to provide good reasons, the Sixth Circuit has made clear: "We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the weight assigned to a treating physician's opinion." *Hensley v. Astrue,* 573 F.3d 263, 267 (6th Cir. 2009) (citation and footnote omitted).

Accordingly, Plaintiff's Statement of Errors is well taken.[2]

**B.     Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson,* 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the

---

[2] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's challenges to the ALJ's assessment of her credibility is unwarranted.

plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of §405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Disability Insurance Benefits must be granted.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Nicole Tajkowski was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4. The case be terminated on the Court's docket.

Date: June 26, 2017  *s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).